## CHATTANOOGA SOUTHERN RAILROAD COMPANY *v.* THOMPSON, and *vice versa.*

1. A petition against a railroad company to recover damages for a breach of contract to furnish cars, wherein it is alleged that the general manager of the defendant orally told the plaintiff that defendant could handle his fruit, and that cars would be placed for him at a designated station on the line of road of the defendant in twenty-four hours after they were ordered through defendant's local agent, and that the plaintiff ordered cars according to such proposal, which cars were furnished, but not within the contract time, is not demurrable on the ground that the contract as alleged was too vague and uncertain to afford a cause of action for its breach.
2. The petition set forth an action for breach of contract, and was not open to the criticism that it contained a joinder of causes of action ex contractu and ex delicto.
3. The obligation of a carrier to furnish cars to a patron may arise either from the duty imposed by law, or from a special contract between the carrier and the patron. In a suit for a breach of a special contract, matters which will not excuse performance of the contract, but only tend to excuse performance of the general duty imposed by law, are not relevant.
4. In a suit to recover damages for failure to furnish cars for the shipment of fruit, where the damages claimed are as compensation for the deteriorated condition of the fruit, caused by the delay in furnishing cars, the difference in the market value of the fruit at the point of shipment at the time the cars should have been furnished, and at the time they were actually furnished, may be considered by the jury in estimating damages.
5. Where by the terms of a contract to furnish cars to transport peaches the plaintiff was to order them through the railroad's local agent, he can not recover of the carrier damages for failure to furnish cars sufficient to transport ungathered peaches for which no requisition had been made.

Argued April 4, — Decided August 10, 1909.

Action for damages. Before W. M. Henry, judge pro hac vice. Chattooga superior court. January 28, 1908.

*Pritchard & Sizer* and *J. M. Bellah,* for the railroad company. *Seaborn & Barry Wright,* contra.

Evans, J. This was an action against a carrier to recover damages for the breach of an oral agreement to furnish cars. In his petition the plaintiff alleged that he was a grower of peaches, and on July 1, 1904, before the peach season opened, he saw the general manager of the defendant, who told him that the defendant could handle his fruit, and that cars would be placed for him at

a designated station in twenty-four hours after they were ordered through the defendant's local agent. At various times between July 15 and August 15, 1904, the plaintiff, after ordering cars, carried to the shipping point 7,802 crates of peaches to be loaded twenty-four hours after the cars were ordered. The cars were not placed within twenty-four hours after they were ordered, but were placed from twelve to twenty-four hours after they were due. The peaches thus brought to the point of loading remained without refrigeration until the cars were delivered, and deteriorated in value between the time the cars were due and the time they arrived $5,019.67. The jury returned a verdict for the plaintiff for $1,989.54, which the court refused to set aside on motion for a new trial. Exception is taken to the overruling of the defendant's demurrer, and to the refusal of the court to grant a new trial.

1. It is urged by the demurrer that the contract as alleged is too vague and uncertain to be the basis of a cause of action. The proposition seems to be thoroughly established that an oral agreement by a duly authorized agent of a carrier to furnish cars to a shipper constitutes a contract which is valid and binding on both parties. San Antonio etc. R. Co. *v.* Timon, 45 Tex. Civ. App. 47 (99 S. W. 418). The allegation of the petition is that the general manager of the defendant made a certain agreement. The contract of a corporation made by its general manager is binding on the corporation. *Raleigh &c. R. Co.* v. *Pullman Co.,* 122 *Ga.* 700 (50 S. E. 1008). So the person alleged to have made the contract was clothed with ample authority to bind the defendant. His proposal to the plaintiff was that the railroad company would ship his fruit in cars which would be placed at a certain station in twenty-four hours after they were ordered through the defendant's local agent. The petition sets forth in detail the various dates, and the number of cars on such dates, the plaintiff ordered through the local agent to be placed at this station, and that the railroad company furnished the cars in response to such orders, but twelve to twenty-four hours late in each instance, and actually transported the plaintiff's peaches. The proposal was to furnish cars after specified notice; the plaintiff gave the notice, and the cars were furnished, but not within the specified time. The contract was definite, certain, and binding as to the cars actually ordered. *McCaw Mfg. Co.* v. *Felder,* 115 *Ga.* 408 (41 S.

E. 664); Toledo &c. R. Co. *v.* Roberts, 71 Ill. 540; *A. & W. P. R. Co.* v. *Camp,* 130 *Ga.* 1 (60 S. E. 177, 15 L. R. A. (N. S.) 594).

2. Another ground of demurrer complains that the petition improperly joined causes of action ex contractu and ex delicto. The action is based upon defendant's alleged breach of a contract to furnish cars. After setting out the contract before alluded to, the petition contains these words: "Relying upon this contract and assurance, petitioner made no other arrangement for the transportation of his fruit." Later on in the petition allusion was again made to the contract alleged to have been entered into with the general manager of defendant company, and it was alleged that the terms of this contract "was a reasonable regulation both towards petitioner and defendant, and was the one theretofore commonly of force at said station." The 7th and 8th paragraphs of the petition were as follows: "Petitioner alleges that it was wrongful in defendant not to supply cars as it had agreed to do, in not having and furnishing sufficient cars to handle petitioner's crop, in not providing storage facilities to protect petitioner from loss by reason of defendant's failure to furnish cars. By reason of the foregoing facts, petitioner has been injured and damaged by defendant in the sum of $8,500." We have reproduced such of the allegations of the petition as the demurrant relies upon as confounding actions of tort and contract. Reference to the contract as being a reasonable regulation is not inconsistent with the contention that the plaintiff's injury was consequent upon a breach of the contract. So much of paragraph seven as refers to the failure to have and furnish cars, when construed with the other allegations of the petition, indicates that the defendant's liability from this cause arose from its failure to furnish cars according to contract.

Another element of damages claimed in the petition was $91 extra expense which the plaintiff incurred in transferring and loading the peaches by reason of the defendant's failure to furnish cars as agreed; and so much of paragraph seven as refers to the failure of defendant to provide storage facilities to protect the shipments from loss evidently had reference to this item of damages claimed to have resulted from a breach of the contract. Besides, even if these allusions were inappropriate or irrelevant, they should have been pointed out by special demurrer. So many of the spe-

9

cial demurrers as were meritorious were met by appropriate amendments.

3. The obligation of a carrier to furnish cars to a patron may arise either from the duty imposed by the law, or from a special contract between the carrier and the patron. When the obligation is imposed by the law, a reasonable excuse for failure to perform it is allowable; but where the obligation springs from the contract, the carrier will be held liable in all cases where the circumstances are not such as to relieve from the performance of contracts generally. Mauldin *v.* Seaboard &c. R. Co., 73 S. C. 9 (52 S. E. 677) ; Toledo &c. R. Co. *v.* Roberts, 71 Ill. 540. The plaintiff's cause of action was not for a breach of duty imposed by law; and therefore the various assignments of error on the admission and rejection of evidence, and on the charge of the court, wherein it is contended that the ruling complained of eliminated a defense solely applicable to the duty imposed by law, are not meritorious.

4. The plaintiff contends that if the cars had been placed according to the contract, his peaches, which were of a fancy grade and in good condition, and which had been placed at the station of the carrier's line of road appointed to receive them, could and would have been immediately loaded by him in refrigerator-cars, and would not have been exposed to the more rapid process of decay resulting from the delay in tendering the car, if the defendant had complied with its contractual obligation. If damages are to be awarded to the plaintiff, they are to compensate him for the deterioration in the condition of the peaches, caused by the defendant's delay in furnishing cars according to contract. If his peaches deteriorated in value because of the delay in furnishing cars, then the carrier is responsible for the damages proximately resulting from such delay. The point is raised that the court adopted an erroneous standard of estimating the damages by allowing proof of the market value of the peaches at Menlo, the station appointed by the carrier to receive them. There was evidence of the market value of the peaches of the grade plaintiff hauled to Menlo for shipment, estimated both at the time the car should have been furnished according to contract, and at the time the cars were actually furnished. The railroad company's insistence is, that, if it is liable for damages resulting from delay

in furnishing cars, the measure of damages is the difference in the market value of the delayed fruit, and what its market value would have been had there been no delay, at the point of destination.  Ordinarily in a suit by a shipper against a carrier, in case of injury to or loss of the property by the carrier's fault, the carrier is required to make compensation on the basis of the value at the place of destination.  In such cases the action is·based upon the breach of the contract or public duty to carry.  In the instant case the cause of action grows out of the contract to furnish cars, which is antecedent to the contract to transport the goods.  Where a railroad company enters into an oral contract to furnish cars for a shipment of goods at a specified station at a specified time, such contract is not voided by the contract between the shipper and the railroad company subsequently to the breach of the oral contract, unless there is some consideration moving the shipper as compensation for damages incurred by him in consequence of the breach of the oral contract.  Clark *v.* Ulster &c. R. Co.,. 189 N. Y. 93 (81 N. E. 766, 121 Am. St. R. 848, 12 Am. & Eng. An. Cas. 883, 13 L. R. A. 164).  The oral contract for the breach of which damages were claimed, though contemplating shipment over the defendant's road, did not stipulate that the peaches were to be shipped to any particular destination; and it appeared from the evidence that the peaches were actually shipped to different markets upon bills of lading issued at the time each particular car was loaded.  So that it is impossible to apply the measure of damages applicable to a breach of contract to carry, to a case like this, seeking damages for the injury consequent upon the breach of the contract to furnish cars.  The shipper's injury is the deterioration in the condition of his fruit, which had been sustained prior to his entering into a contract to ship peaches to a particular market. Where the goods intended to be shipped have a market value at the initial place of shipment, it is competent to show the difference between the market value ·of the goods at the time the cars were contracted to be furnished and at the time the cars were actually furnished.  The contract to furnish cars contemplated that they were to be furnished for the purpose of transporting perishable fruit.  The terms with respect to the time in which the cars were to be furnished were to enable the shipper to promptly load his fruit.  The nature of the subject-matter of the contract

was of such a character that the railroad was bound to know that if the shipper, in anticipation of the carrier's compliance with its contract, brought his peaches to the point of shipment at the time it had been agreed the cars would be furnished, delay in furnishing the cars would necessarily result in injury to the fruit which would be left without refrigeration during the period of delay. In a Texas case it was held that the damages for failure to furnish cars to ship property in fulfillment of a contract are the profits which the shipper would have made on the contract if the cars had been furnished, and this would be true although the carrier had no knowledge of the shipper's contract. Houston &c. R. Co. v. Campbell, 91 Tex. 551 (43 L. R. A. 225, 45 S. W. 2). This case is cited to show that in other jurisdictions the damages for a breach of a contract to furnish cars are not always measured by the market value of the goods at the point of destination.

5. One item of damages claimed by the plaintiff was that he had lost 4,000 crates of peaches of the value of $2,400, which rotted in the orchard by reason of defendant's failure to furnish cars. This was stricken from the petition on demurrer, and the defendant in error complains of this action of the court. According to the contract as set out in the petition, the railroad company was only bound to furnish cars on the plaintiff's requisition, made through the local agent; and as no requisition was made for cars to haul the ungathered peaches which rotted, this item of damages was properly eliminated from the case.

*Judgment on the main and cross-bill of exceptions affirmed. All the Justices concur.*