### HAMILTON et al. v. COOPER et al.

Under the evidence in the case the court erred in granting a nonsuit,. as there was some evidence in the record supporting the material allegations in the plaintiffs' petition.

No. 1441. JANUARY 14, 1920.

Equitable petition. Before Judge Wright. Walker superior court. March 6, 1919.

Hamilton and others filed in the superior court their petition asking that T. D. Cooper, the Board of Commissioners of Roads and Revenue of Walker County, and the district road commissioners be enjoined and restrained from further prosecuting or further instituting against petitioners, or either of them, any proceeding, civil or criminal, by reason of plaintiffs having fenced up and enclosed four hundred and fifty feet of a certain county road, as described in the petition. Plaintiffs had fenced up a portion of the road which for a number of years had been maintained as a public road of the county, claiming a right to do so because of the fact that the United States Government had constructed a new

road running parallel with said old road, and at some points very close to said old road. As a basis for the writ of injunction the plaintiffs alleged that one of them, W. K. Brown, had been served with a notice to remove the obstruction placed across said public road; and it is admitted in the petition that the obstruction had been placed, and that it prevented travel over and along the old public highway between the residence of one of the defendants, T. D. Cooper, and a portion of his farm. The plaintiffs further alleged that in lieu of the roadway which had been fenced up and appropriated to their use they had opened another roadway for the use of T. D. Cooper.

At the trial of the case, after the introduction of evidence by the plaintiffs, upon motion of the defendants' counsel the court granted a nonsuit, and the plaintiffs excepted.

*Charles Robert Jones* and *Henry & Jackson,* for plaintiffs.

*Shattuck & Shattuck* and *Rosser & Shaw,* for defendants.

BECK, P. J. (After stating the foregoing facts.) Under an act approved November 19, 1890 (Acts 1890 p. 199), entitled "An act to cede jurisdiction to the United States of certain lands therein described for the Chickamauga and Chattanooga National Park," the jurisdiction of this State was ceded to the United States over all the lands and roads described in the preamble to the act, which lie within the territorial limits of this State, for the purposes of a National Park. Petitioners claim that the road in question was one of the roads the control over which was ceded to the United States Government; and there is some evidence to support this contention. In an act passed by Congress, approved August 19, 1890, entitled "An act to establish a National Military Park at the battlefield of Chickamauga," jurisdiction over the land and roads thus ceded was accepted and declared upon the passage of the act of cession by the General Assembly of Georgia; and in the act of Congress it is declared that "the following described highways are hereby declared to be approaches to and parts of the Chickamauga and Chattanooga National Military Park as established by the second section of this act." Then follows an enumeration of the roads and highways referred to, among them being "the Dry Valley road from Rossville, Georgia, to the southern limits of McFarland's Gap," etc., which, for convenience, we shall designate as the McFarland's Gap road. There is evidence to show

that the plaintiffs owned the property claimed, abutting upon the McFarland's Gap road, and that the United States Government had constructed a new road which is entended as a substitute for the old road, being superior in construction and better adapted to the purposes of travel and transportation than the old road; and it was clearly the intention to abandon the old road and substitute the new road for it.  The plaintiffs contend, further, that as the old road was abandoned and the new road substituted therefor, they, as abutting landowners, had the right to close the old road and occupy it.  This contention seems to us sound.  For if the old road was discontinued and a new road substituted therefor, this would constitute a discontinuance of the old road, and there would be no reason why the abutting landowners should not enclose it together with their other lands adjoining.  The defendants in error insist that mere nonuser of the old road would not constitute an abandonment and does not work a forfeiture of the right to its use; that an existing public road could not be discontinued without the order of the county commissioners, based upon application and notice duly registered in the proper office, under the provisions of section 644 of the Political Code, which makes provisions for the discontinuance of roads; and they cite in support of their position the decision by this court in the case of *Jones* v. *Williams,* 70 *Ga.* 704.  In that case it was said: "That abandonment of a public highway by mere nonuser does not work a forfeiture of the right to its use, is evident from our legislation upon the subject. An existing public road can not be discontinued without the order of the ordinary or county commissioners, where there are such commissioners, passed upon application and notice, and duly registered in the proper office.  Code [of 1882], §§ 603 to 608 inclusive."  We do not think, however, that after the cession of the territory to the National Government for the purposes enumerated, the State of Georgia or the county authorities had any longer the right to change, alter, or discontinue the roads in the territory ceded. Certain rights in that territory are reserved by the act, such as the execution of specified writs in the territory, and the right of taxation of the property in the territory, and other enumerated rights; but control over the roads in the ceded territory was given to the Federal Government; and the laws on our statute books relative to altering and discontinuing roads do not now apply to

the part of the roads in the Chickamauga Park. And when the United States Government discontinued the use of the road and substituted therefor one which was practically the same, the part of the old road abandoned might be reclaimed and closed and used by the abutting landowners. The terms upon which the landowners might control and use the property are provided for in the act of Congress. It would seem that the act of cession by our legislature, and the act of Congress accepting the authority given, would involve the right to make changes and alterations in the highways and in the park. And as has been said by this court, "it is perhaps true that under a citation to alter a road it would not be competent to discontinue the road altogether, but it is obvious that every alteration of a road involves necessarily the discontinuance of the part replaced by the alteration." It is not necessary to go further and decide whether or not the National Government could altogether discontinue the road in question without constructing another which is substantially the same road with necessary alterations. But it seems clear, from the provisions of the act of the General Assembly and the act of Congress referred to above, that where the Government has undertaken the alteration of a road and the owner of abutting land has enclosed the part of the old road which is abandoned, neither the county authorities nor the State authorities have such jurisdiction as would authorize them to interfere with such a landowner who encloses the part of the abandoned road. And that being true, under the evidence in this case the court should not have nonsuited the petitioners; as there was some evidence from which the jury might have found that in making the enclosures the petitioners were acting within their rights. We do not think that they could make such enclosures as would cut off from other landowners access to the road as altered; and if they should attempt to do so, the injured landowner would have access to the proper courts to prevent the interference with his rights. Whether the enclosures made by the petitioners in this case interfere with the access of other landowners to the roads constructed by the Federal authorities is also a question under the evidence; and that issue should be submitted to the jury.

There was no general or special demurrer filed, attacking the prayer for relief on the ground that it was too broad, in that it prayed injunction against any civil or criminal proceedings against

the plaintiffs, nor insisting that the injunctive relief sought should be confined to the proceedings threatened by the county authorities to have the enclosure made by the plaintiffs removed; and consequently the question is not presented to this court as to whether or not some of the relief sought is not inappropriate.

*Judgment reversed. All the Justices concur.*